# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| 1704 FARMINGTON, LLC, ) | |
| 1711 FARMINGTON, LLC, and ) | |
| 1685 FARMINGTON, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| v.  ) | No. 08-cv-2171-STA-cgc |
| ) | |
| CITY OF MEMPHIS, ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING DEFENDANT CITY OF MEMPHIS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant City of Memphis' Motion for Summary Judgment (D.E. # 30) filed on June 15, 2009. Plaintiffs have filed a response in opposition, and Defendant has filed a reply brief. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

The Court has jurisdiction over this matter by virtue of the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332. The following facts are not in dispute unless otherwise noted.[1] This lawsuit focuses on a concrete channel (hereinafter referred to as the "ditch"

---

[1] Plaintiffs have properly responded to Defendant's Statement of Undisputed Facts as required by Local Rule 7.2(d)(3). In addition, Plaintiffs have submitted their own Statement of Undisputed Facts. The Court has reviewed them; however, the Court has not included them here. Local Rule 7.2(d) only permits the non-moving party to respond to the movant's statement

"channel" or "drainage ditch" interchangeably) in the City of Memphis, located adjacent to the Ridgeway Commons apartment complex and intersecting Quince Road.  Def.'s Statement of Undisputed Facts ¶ 1.  The drainage ditch in question is a concrete-lined channel, which runs from the southern end of Lichterman Lake to a point just north of Bill Morris Parkway at Nonconnah Creek.  *Id*. at ¶ 2.  The channel was not designed and constructed in a continuous manner but in different sections at different times.  *Id*.  The majority of the drainage ditch that is the subject of this lawsuit was designed and constructed in the late 1960's and early 1970's by J & L Development Company.  *Id*. at ¶ 3.[2]  The box culvert under Quince Road was originally installed by Shelby County when the property was located outside of the city limits.  *Id*. at ¶ 4.  It then became property of the City of Memphis after the area was annexed and has since been maintained by the City of Memphis.  *Id*.[3]  The City of Memphis did not plan, design or construct the portion of the drainage ditch that is the subject matter of this lawsuit.  *Id*. at ¶ 5.  The only portion of the subject drainage ditch that was planned, designed and/or constructed by the City of Memphis was the portion adjacent to Ridgeway High School.  *Id*.  The portion of the drainage

---

of facts "by attaching to the response, the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designate material facts are at issue."  A non-movant is not afforded the opportunity of filing its own additional facts unless, of course, the non-movant wishes to files its own motion for summary judgment.  Therefore, on a motion for summary judgment, the Court looks only to the movant's statement of facts and the non-movant's response to those facts per the procedure established by Local Rule 7.2(d)(3).

[2] Plaintiffs have cited deposition testimony of George Cox purporting to dispute this statement.  However, Cox refers extensively in his testimony to exhibits which are not provided here to the Court.  As a result, the Court is unable to determine whether the fact is in dispute due to the Plaintiffs' failure to produce the evidence to contest Defendant's evidence.

[3] In its Memorandum in support of its Motion, Defendant argues that it is not the fee owner of the channel but only has an easement for the purpose of performing maintenance.  The Court finds that this argument is at odds with this statement of fact.

ditch constructed by the City of Memphis that runs through the Ridgeway school property was constructed after the portion adjacent to Plaintiffs' property and the box culverts.  *Id*. at ¶ 6.[4] Since the development of Plaintiffs' property, land adjacent to the drainage ditch or near Plaintiffs' property and the drainage ditch has been developed by other private entities.  *Id*. at ¶ 8.

When a private developer constructed the apartments at Ridgeway Commons and the Balmoral Shopping Center during the late 1960s and early 1970s, the City of Memphis' design criteria for construction of a concrete drainage channel was two CFS per acre, which means a flow rate for drainage of two cubic feet per second per acre.  *Id*. at ¶ 7.  In April 1987, the City of Memphis adopted a drainage manual that requires the concrete portion of a channel to carry water representing a 25-year flood event.  *Id*. at ¶ 11.  The City of Memphis did not require that improvements built prior to 1987 be updated or brought up to the new standards because it would not be economically feasible or viable to do so.  *Id*.  The City of Memphis does not guarantee that property adjacent to drainage channels will never experience flooding.  *Id*. at ¶ 12.  The City of Memphis does not expressly or impliedly warrant or guarantee that all water will remain within the walls of the drainage channels located in the city limits.  *Id*. at ¶ 13.

The portion of Plaintiffs' property directly adjacent to the subject drainage ditch is lower than the top of the wall elevation of the drainage ditch.  *Id*. at ¶ 14.  A developer typically fills the land up to the top of that wall and then develops up from that point to avoid flooding, but that was not done on Plaintiffs' property.  *Id*.  Plaintiffs contend that George Cox who offered this testimony is not an expert in construction practices.

---

[4] *See* note 2.

The developer of Plaintiffs' property, J & L Development, developed the property below the elevation of the top of the channel wall. *Id*. at ¶ 15. The surrounding properties are set at a level above the channel, but the portion of the subject property experiencing flooding is set very low. *Id*. Plaintiff contends that the finished floor levels of the apartment units experiencing flooding are nevertheless higher than the top elevation of the ditch wall. *Id*. at ¶ 16. Some water intake inlets on the property are lower than the top elevation of the channel lining walls as well. *Id*. According to Defendant, the inlets that are below the graded level of the drainage ditch are a major contributing cause to the flooding on Plaintiffs' property. *Id*. at ¶ 17. The lowness of Plaintiffs' property relative to the height of the drainage ditch causes the drainage system to not function properly during storm events. *Id*. at ¶ 18. The inlets are supposed to get the drainage off the property, but they are lower than the top of the drainage ditch, and one has been paved over, so the property will not drain in a two CFS per acre storm event when the water surface elevation in the main drainage channel rises causing back up on the low property and preventing the drainage from running out. *Id*. As the water in the channel rises, water backs up through the low inlets in the property so the drainage that is running downhill off the property has no where to go, and in essence the low areas on the property act like a detention system. *Id*. at ¶ 19.

Plaintiffs have offered the opinion testimony of their own expert Guy Forney. Forney has opined that the major contributing cause of flooding is the ditch's inability to carry drain water from property upstream. As the ditch fills with run-off, it malfunctions, and water from the ditch is forced through the inlets onto Plaintiffs' property and causes flooding. Plaintiffs argue that the flooding was the result of water pushing over the walls of the ditch due to the malfunction of the ditch.

4

There was more than one cause to the flooding events at the Ridgeway Commons Apartment Complex, including the backup of water in the drainage ditch and the rainfall event or watershed. *Id*. at ¶ 20.[5]  The plans originally submitted to the City of Memphis for the development of this property show the elevation of the land adjacent to the drainage ditch and the floor elevation of the finished apartment units as being higher than the elevation of the top of the drainage system's wall. *Id*. at ¶ 21.[6] The survey performed by Tom Dorsey in this case shows the finished floor elevations for the apartment units adjacent to the channel and the parking lot elevation are lower than the proposed elevations and the inlets proposed in the original plan are not identifiable. *Id*. at ¶ 22. The only expert to provide an opinion about the cause of the flooding on Plaintiffs' property was George Cox, who stated the elevations of the property fail to conform to practical construction practices because they are below the top of the channel wall, and this is the primary cause of the flooding on Plaintiffs' property, and that opinion remains uncontested. *Id*. at ¶ 23. Plaintiffs respond that they have proffered the expert testimony of Guy Forney who offered his opinion on the cause of the flooding.

Some storm or rainfall events are so severe that they cause flooding, even when an adequately designed and constructed drainage system is in place. *Id*. at ¶ 24. Once the City of Memphis has an easement, it is the City of Memphis' responsibility to maintain the portion of the infrastructure over which it has an easement. *Id*. at ¶ 25. Maintenance does not include

---

[5] The Court finds that there is no material dispute concerning Defendant's statement.

[6] Plaintiffs' contention that Defendant's statement is unintelligible is without merit.

preventing a channel from flooding, which is instead a design issue. *Id*. at ¶ 26.[7] Maintenance does not include redesigning or replacing the channel with a new one. *Id*. at ¶ 27.[8] Maintenance means keeping the channel intact, keeping obstructions out of the channel, keeping the safety fence in tact, fixing and repairing damage to the channel, but not redesigning and/or replacing the channel. *Id*. at ¶ 28.[9]

For example, a representative for the Plaintiffs, Kaye Griffin, contacted the City of Memphis a week before the flooding event of 2005 and asked that the City of Memphis clean out the ditch. *Id*. at ¶ 29. The City of Memphis promptly responded to Ms. Griffin's complaint and took the requested action. *Id*. at ¶ 30. If the apartments had been built at a higher elevation or if Plaintiffs rebuilt the apartment units that experience flooding at a higher grade, the flooding would be eliminated. *Id*. at ¶ 31. The City of Memphis cannot design a drainage system in a municipality for the maximum event that can occur because it is economically unfeasible. *Id*. at ¶ 32.[10] Typically, the City of Memphis would not accept an easement knowing that the land adjacent to the ditch was lower than the ditch wall. *Id*. at ¶ 33.[11]

Plaintiffs can confirm, at most, three flooding events on the subject property over a

---

[7] Plaintiffs have disputed this statement of fact by referring to the deposition testimony of an expert witness, Frank Palumbo. The Court has ruled that Palumbo should be stricken as an expert witness due to Plaintiff's failure to disclose Palumbo as required by the Federal Rules. Order Granting Def.'s Mot. Strike, July 31, 2009. Therefore, the Court will not consider any opinion testimony offered by Palumbo.

[8] *See* note 5.

[9] *See* note 5.

[10] *See* note 5.

[11] *See* note 5.

6

period of ten (10) years, one in 1999, one in March of 2004 and one in July of 2005. *Id*. at ¶ 34.[12] On July 19, 2005, the storm event that is the focus of Plaintiffs' Complaint, heavy rains in the area of Ridgeway Commons resulted in an overflow of the concrete lined drainage ditch which is adjacent to the eastern driveway of the northwest phase of Plaintiffs' property. *Id*. at ¶ 35. Plaintiffs have taken no measures since the flooding events to stop or prevent flooding on the property. *Id*. at ¶ 36. Plaintiffs could have, but did not, construct either a retention or other drainage system on the property to alleviate any flooding issues. *Id*. at ¶ 37. Plaintiffs dispute this fact by citing the opinion testimony of Guy Forney that the remedial measures might not be economically feasible and may not alleviate the flooding issues.

In their Complaint, Plaintiffs allege that the inability of the drainage ditch in question to function properly has created a public nuisance for which Defendant is liable. More specifically, periodic flooding has resulted in damage to the apartment units located adjacent to the drainage ditch. Plaintiffs seek a declaration that the channel is a nuisance and injunctive relief directing Defendant to abate the nuisance. In addition to the injunctive relief, Plaintiffs seek damages for the costs incurred to restore the apartments after two separate instances of flooding as well as for inconvenience and loss of use and enjoyment of the property. Plaintiffs also seek incidental damages for costs incurred in the investigation of the flooding, expert consultants and attorneys fees for the abatement of the nuisance.

Defendant has filed the Motion for Summary Judgment now before the Court. In support Defendant argues that Plaintiffs have failed to plead their claims pursuant to the Tennessee

---

[12] While Plaintiff is correct that the three flooding incidents occurred within a six (6) year span, the last incident occurred in 2005. Therefore, it is true that there have been three incidents in the last ten (10) years.

7

Government Tort Liability Act ("GTLA").  According to Defendant, a nuisance claim where a plaintiff seeks money damages against a municipality must be brought under and comply with the procedures of the GTLA.  Even if Plaintiff had correctly pled their claim under the GTLA, Plaintiffs failed to give Defendant the notice required by the Act.  Likewise, Defendant contends that it is immune from suit with respect to the common law nuisance claim.  Defendant did not design, plan, or construct that portion of the drainage ditch at issue.  The City argues that a private developer constructed the channel and retains ownership of the channel.  Defendant merely holds an easement over the channel for the purpose of maintenance.  Furthermore, it cannot be said that the channel is in a dangerous or defective condition.  The channel functions properly, and the flooding of Plaintiffs' apartment units is the result of the faulty grading of the site where the apartments are located and heavy, infrequent rain storms.

For the same reasons, Defendant insists that it did not cause or contribute to the flooding of Plaintiffs' property.  Defendant argues that Plaintiffs' own surveys indicate that the floor levels of the flooded apartments and the elevation of the land adjacent to the drainage ditch are lower than the elevations proposed in the original plans approved by the City.  Defendant cites other conditions existing on Plaintiffs' property which cause or contribute to the flooding.  For its part Defendant has done nothing to increase the run-off or create the nuisance Plaintiffs allege.  Defendant has not developed the property in any way to increase the amount of watershed.  The City does not guarantee that the drainage ditches it maintains will never flood.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[13]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[14] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[15] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[16] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[17] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[18]

Summary judgment must be entered "against a party who fails to make a showing

---

[13] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[14] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[15] *Celotex*, 477 U.S. at 324.

[16] *Matsushita*, 475 U.S. at 586.

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[18] *Id.* at 251-52 (1989).

9

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[19]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[20]  Finally, the "judge may not make credibility determinations or weigh the evidence."[21]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[22]

## ANALYSIS

It is undisputed in this case that Tennessee law applies.  Under the *Erie* doctrine, in cases where a federal court exercises jurisdiction by virtue of the diversity of the parties, the federal court is bound to apply the substantive law of the forum state as if the action had been brought in a state court of the jurisdiction where the federal court is located.[23]  The federal court must apply the law as it has been determined by the highest court of that state.[24]  When the highest court of the forum has not answered a particular question of law, the federal court must discern or predict

---

[19] *Celotex*, 477 U.S. at 322.

[20] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[21] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[22] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[23] *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[24] *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003).

how the state courts would respond if confronted with the question.[25]  The federal court must

ascertain from all available data what the law is and apply it.[26]  In the absence of any indication

that the state's highest court would adopt a rule contrary to the rule announced in an intermediate

appellate court, a federal court is not free to ignore the announcement of a state appellate court

on matters of state law.[27]

The second issue presented in Defendant's Motion is actually the threshold issue in this

case, and that is whether the City is liable for the creation or maintenance of a nuisance.  Here

the City contends that it did not construct the portion of the drainage ditch at issue and that it has

not improperly maintained the ditch.  The grading of the property is the primary cause of the

flooding in Plaintiffs' apartment units during storms producing heavy rainfall.  The City had no

part in grading or developing the land on which Plaintiffs' predecessors built the apartments.

Defendant admits that the developer did submit plans of the ditch and the apartments to the City

for approval.  However, Defendant asserts that the apartments were constructed at an elevation

lower than the elevation indicated on the plans, presumably due to an error in grading.  The City

further argues that it was not responsible for the increase in the volume of surface water

emptying into the drain.  Defendant points out that Plaintiffs have alleged that continuing

development of the property adjacent to the ditch has caused the increased run-off upstream from

Plaintiffs' property.  Thus, the Defendant argues that Plaintiffs have a cause of action against

---

[25] *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*,740 F.2d 1362, 1365 (6th Cir. 1984); *Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir. 1981).

[26] *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601 (6th Cir. 1985).

[27] *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

those property owners, not Defendant.

Plaintiffs respond that Defendant formally accepted the dedication of an easement over the channel on May 18, 1972. For its part Defendant agreed to maintain the channel and the other real property along the ditch covered by the easement. Defendant's arguments about ownership to the contrary, Plaintiffs argue that Defendant's duty to maintain is a duty to keep the channel operational. Plaintiffs cite new standards for drainage improvements adopted by the City in 1987 with which the channel at issue does not conform. Plaintiffs argue that the 1987 regulations are a recognition by Defendant that "public safety requires more" than the former standards under which the channel was constructed. Furthermore, Defendant is responsible for the creation of the nuisance in this case because the City approved the planning and design of the ditch and supervised the construction of the ditch throughout before the City ever accepted the easement. Plaintiff proffers the testimony of its expert Guy Forney that the elevations of the property and the fact that an inlet on Plaintiffs' property is now covered are not contributing causes to the flooding. According to Plaintiffs, "Plaintiffs' property floods as a result of the drainage ditch's inability to operate as it was intended, i.e., carry upstream water runoff and runoff from Plaintiffs' property downstream under Quince Road."[28] Plaintiffs do admit that the parking lot adjacent to the apartment units is lower than the top of the drainage ditch wall. However, Plaintiff contends that the City is responsible for the nuisance that has resulted in the injuries to Plaintiffs' property.

The Court holds that Plaintiffs have failed to adduce evidence from which a reasonable juror could conclude that the City took some affirmative act to create or maintain a public

---

[28] Pls.' Resp. in Opposition, 16.

12

nuisance that has injured their property. Under Tennessee law, a nuisance is "anything that annoys or disturbs the free use of one's property, or that renders its ordinary use or physical occupation uncomfortable."[29] Tennessee courts have recognized that nuisances may be of a temporary or permanent nature.[30] A temporary nuisance is one "that can be corrected by the expenditure of labor or money."[31] A permanent nuisance is "presumed to continue indefinitely, and is at once productive of all the damage which can ever result from it. . . ."[32] Likewise, a governmental entity may liable for nuisance where it has created or maintained a nuisance.[33] In order to establish the liability of a governmental entity for nuisance, a plaintiff must show (1) that the alleged nuisance is an inherently dangerous condition, and (2) that the governmental entity took some affirmative act to create or maintain the nuisance.[34] It is clear that both elements must be satisfied in order to preserve the distinction between negligence, or "an omission of duty," on the one hand and nuisance, or "an active wrong," on the other.[35]

Applying these standards to the case at bar, the Court holds that Plaintiffs cannot

---

[29] *Pate v. City of Martin,* 614 S.W.2d 46, 47 (Tenn. 1981) (*Pate II*).

[30] *Caldwell v. Knox Concrete Prods., Inc.*, 391 S.W.2d 5, 11 (Tenn. Ct. App. 1964).

[31] *Pate II*, 614 S.W.2d at 48. *But see Leggett v. Dorris*, 2009 WL 302290, *3 (Tenn. Ct. App. Feb. 6, 2009) ("these definitions are not entirely satisfactory. . . . After all with enough money and labor, nearly anything is possible.").

[32] *Caldwell*, 391 S.W.2d at 11.

[33] *E.g., Vaughn v. City of Alcoa*, 251 S.W.2d 304 (Tenn. 1952); *Bobo v. City of Kenton*, 212 S.W.2d 363 (Tenn. 1948).

[34] *Paduch v. City of Johnson City*, 896 S.W.2d 767, 770-71 (Tenn. 1995). *See also Dean v. Bays Mountain Park Ass'n*, 551 S.W.2d 702, 704 (Tenn. Ct. App. 1977).

[35] *Dean*, 551 S.W.2d at 704 (citing *Powell v. City of Nashville*, 69 S.W.2d 894 (1933)). *See also Burnett v. Rudd*, 54 S.W.2d 718 (Tenn. 1932).

establish that the City took an affirmative act to create or maintain the nuisance. Viewing the undisputed evidence in the light most favorable to Plaintiffs, the Court finds that the City did not create the drainage ditch at issue. On the contrary, the ditch was constructed by a private developer who later dedicated an easement to the City for the maintenance of the ditch. This fact alone makes this case distinguishable from the majority of nuisance cases brought against governmental entities where a city or county itself undertakes some public work or an improvement that results in the creation of a nuisance. The evidence on the record in this case shows that the City did not plan, design, or construct the drainage ditch in question even though the City approved the plan of the private developer. It is undisputed that a firm known as J & L Development Company designed and constructed this portion of the drainage ditch in the late 1960s and early 1970s. The box culvert under Quince Road was originally installed by Shelby County when the property was located outside of the city limits. It is also true that when the City annexed the area, the channel became city property, and the City undertook the maintenance of the channel. From these facts it cannot be said that the City undertook some affirmative act to create the nuisance Plaintiffs allege.

Plaintiffs argue that it is immaterial that Defendant did not undertake an affirmative act to design or create the drainage ditch. The City is liable because it has "maintained" the nuisance or failed to keep the channel "operational." However, there is no binding authority for the proposition that a governmental entity "maintains" a nuisance where an improvement constructed by private developers and later dedicated to a city or county constitutes the nuisance. Plaintiffs cite in support an unreported decision of the Tennessee Court of Appeals for the proposition that a city may be liable for a nuisance even where a private developer actually

14

designed and constructed the defective public work. In *Morris v. City of Memphis*, the plaintiffs alleged that the dangerous and defective condition of the sewer system in their neighborhood caused flood damage to their residence and constituted a public nuisance.[36] The *Morris* plaintiffs averred that the City had negligently maintained the sewer system and had notice of the dangerous condition of the sewers. Even though the private developer of the neighborhood had constructed the sewer system, the Court of Appeals affirmed the verdict against the City.

The evidence in *Morris* showed that a private developer had built the subdivision and its sewer system in 1974. Although the developer was required to meet the same two CFS standard for drainage discussed above, the sewer's design and construction had failed to comply with that standard. The sewer system at issue never functioned properly and was not functioning properly when the City annexed the *Morris* plaintiffs' neighborhood in 1990. The only affirmative acts attributed to the City in *Morris* were its approval of the original subdivision plan in 1974 ( even though the plans for the sewer were never in compliance with City standards) and later the annexation of the neighborhood and its "defective and possibly dangerous sewer system." The trial court also concluded that the City was negligent in maintaining the sewer after the annexation. The *Morris* court held that the City was liable for the nuisance because it should have known that the sewer system in the Morris' neighborhood did not comply with the drainage requirements in effect at the time of construction in 1974 or at the time of the City's annexation in 1990.

The Court finds *Morris* unpersuasive and factually distinguishable from the case at bar. Unlike the sewer system in *Morris*, there is no evidence that the drainage ditch in this case was

---

[36] 1995 WL 72539, *4 (Tenn. Ct. App. Feb. 22, 1995).

not designed or built in compliance with the two CFS standard in effect when the developer first built the channel in the late 1960s and early 1970s. In fact, there is no evidence that the drainage ditch is or ever was defective in the same way that the sewer system in *Morris* was. Plaintiffs have adduced evidence of only three flooding events on their property, the first dating to 1999. Thus, there is no evidence that the ditch ever "malfunctioned" from the time of its construction in the late 1960s until 1999, a span of approximately thirty years. Unlike the sewer system in *Morris*, there is no evidence that the ditch was defective at the time the City accepted the dedication of the easement in 1972. It is true that in 1987 the City increased the drainage standards for concrete channels and required them to have sufficient capacity to handle a 25-year flood event. However, the evidence shows that the City determined that it would be cost prohibitive to bring improvements built prior to 1987 up to the new standards. Thus, drainage systems like the one in this case were exempted from the new requirements. In light of the City's prospective application of the 1987 standards, it cannot be said that the City has "maintained" a defective ditch. These facts alone distinguish this case from *Morris*.

 Furthermore, there is no evidence that the City has failed to maintain the ditch or keep it functioning. Defendant has adduced uncontested evidence that "city maintenance" of a dedicated improvement does not customarily include redesigning or replacing existing structures. Instead the City maintains the ditch by removing obstructions from the channel or fixing and repairing damage to the channel. For example, the City has proffered evidence that it responded to a request to clean out the ditch one week before the flooding event of 2005. Unlike *Morris*, there is no evidence that the City has failed to the perform routine maintenance of the ditch.

16

The real issue in this case is not whether the City has created or maintained a "malfunctioning" channel but whether the City should be liable for the increase in storm water that periodically fills the channel and causes flooding on Plaintiffs' property. The Court finds that *Britton v. Claiborne County*, another decision of the Tennessee Court of Appeals, addresses this issue more directly than the *Morris* case.[37] Like Plaintiffs here, the plaintiff in *Britton* alleged that the county had failed to maintain a ditch[38] as well as a county road in a way that would divert surface water away from her property. Although the plaintiff's property was at an elevation lower than property across the road, plaintiff's property had not flooded in the thirty years she had lived there. The *Britton* plaintiff began to experience flooding, however, when a nursing home and two residences were constructed across the road from her property. Those improvements increased the amount of surface water that was diverted to her property during rain storms. The *Britton* plaintiff also alleged that the developers had filled in a natural ditch which resulted in more run-off draining onto her property. After recovering damages in a suit against the private property owners across the road, the plaintiff brought suit against the county for failure to maintain the ditch and road in a manner which would divert the new drainage away from her property.

The Court of Appeals held that the county was not liable to Britton for the flooding of her property. There was no evidence that the county had ever maintained the natural ditch. More importantly, there was no proof that the county road or its right-of-way was in a defective or dangerous condition. Instead, the *Britton* court ruled that "where property owners are damaged

---

[37] 898 S.W.2d 220, 222 (Tenn. Ct. App. 1994).

[38] The *Britton* plaintiff referred to the ditch as a "grassy depression." *Id*.

by natural water runoff created by private individuals or entities, their recourse is against those creating the runoff - not against the county or municipality."[39] The *Britton* court cited with approval *Miller v. City of Brentwood*, another case involving municipal liability for flooding caused by a drainage ditch.[40] The *Miller* plaintiffs complained of an increase in water volume in a drainage ditch which caused the ditch to overflow and storm runoff to flood the plaintiffs' property. The *Miller* court held that the plaintiffs' cause of action was against the property owners whose improvements had increased the volume of surface water emptying into the ditch, not the city.

In light of *Britton* and *Miller*, the Court holds that the City cannot be liable for nuisance in this case where private developers are responsible for the increased run-off that causes the flooding. Plaintiffs themselves admit that development of surrounding property has increased the volume of water in the channel, which in turn has led to flooding of Plaintiffs' property. The undisputed evidence shows that private developers have continued to develop land adjacent to the drainage ditch and near Plaintiffs' property since the late 1960s and early 1970s. Like the plaintiff in *Britton*, Plaintiffs admit that subsequent development has increased the amount of surface water being conducted into the channel during rain storms. The increase in drainage from new development is also consistent with the fact that the first flooding of Plaintiffs' property occurred in 1999, or nearly thirty years after the ditch was built. Plaintiffs' property flooded again in 2004 and 2005. The Court has already concluded that there is no evidence that the channel was not built up to the applicable standards for concrete drainage channels or that

---

[39] *Id*. at 223-24.

[40] 548 S.W.2d 878 (Tenn. Ct. App. 1977).

the City had failed to maintain the channel over time.  In other words, the channel itself was not in a dangerous or defective condition.  Thus, a reasonable inference to be drawn from the evidence is that the ditch adequately conveyed storm water away from developed property like Plaintiffs' up to 1999.[41]  Viewing this evidence in the light most favorable to Plaintiffs, the increase in storm water is attributable to the development of property adjacent to the channel.

From these premises Plaintiffs argue that the City is responsible for the flooding due to the increase in storm water.  However, Plaintiffs have proffered no evidence that Defendant has engaged in any affirmative act to increase the volume of drainage emptying into the ditch.  For example, there is no evidence that the City actively pumps water into the ditch contributing to the increased volume of water in the channel.  In fact, Plaintiffs have not asked the Court to order the City to take steps to decrease the amount of water draining into the ditch.  Rather Plaintiffs allege that the City has failed to improve the ditch to keep pace with new development so that the ditch can carry greater volumes of storm water without flooding Plaintiffs' property.  According to Plaintiffs, the result is that the channel has become a nuisance due to the City's negligence.  Plaintiffs in essence ask the Court to order the City to resign the channel so that it can handle greater capacity.  Even if the City had a duty to undertake such an improvement, the Court does not believe that the City's alleged "omission of duty" rises to the level of an "active wrong," that is, a nuisance.  Even if Plaintiff had established that Defendant had committed an

---

[41] The other explanation is that the rain storms in 1999, 2004, and 2005 produced an amount of rain unprecedented since the construction of the ditch.  There is, however, no evidence in the record for this conclusion.

19

affirmative act, there is simply no authority for a court ordering this type of relief.[42]  Without some showing that the City has committed an affirmative act to create or maintain a nuisance, the Court holds that Plaintiffs do not have a cause of action against Defendant.

Based on the foregoing, the Court holds that no reasonable juror could find that the City took affirmative steps to create or maintain a nuisance with respect to the drainage ditch at issue or the increase in storm water that causes flooding on Plaintiffs' property.  Therefore, Defendant is entitled to summary judgment on Plaintiffs' nuisance claim.  The Court need not reach the other issues raised in Defendant's Motion concerning the applicability of the GTLA

## CONCLUSION

The Court holds that Plaintiffs have failed to establish the elements of their prima facie case for nuisance.  The Court need not reach the GTLA issues raised in Defendant's Motion.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 26th, 2009.

---

[42] *See Miller* 548 S.W.2d at 883 ("there is no authority for compelling a city to construct an artificial drainage sewer").